```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | |
|---|---|
| CATHY T. DIPAULO, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
|    v. | )   1:09cv592 |
| | ) |
| JOHN POTTER, Postmaster General, | ) |
| United States Postal Service, | ) |
| | ) |
|         Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

    Plaintiff Cathy T. DiPaulo ("DiPaulo") brings this action against John Potter in his representative capacity as Postmaster General of the United States Postal Service ("USPS") under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 et seq. and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., alleging claims of mental disability discrimination.  USPS has filed a motion to dismiss or, in the alternative, for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, respectively.  (Doc. 4.)  USPS also moves to strike DiPaulo's surreply brief filed December 21, 2009, pursuant to Fed. R. Civ. P. 12(f).  (Doc. 13.)  The court analyzes USPS's motion as one for summary judgment and, for the reasons stated below, grants it.

## I. FACTS

On motion for summary judgment, the court views the following evidence in the light most favorable to DiPaulo. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

From September 1994 to September 2004, DiPaulo was a rural letter carrier employed by USPS in its Hillsborough, North Carolina, office. (Doc. 1 ¶¶ 4-7.) In March 2004, she was reassigned a new delivery route, which she found in need of a major labeling overhaul. (Id. ¶¶ 9-10.) DiPaulo ordered new case labels, but once they were received her supervisor, Lori Warren ("Warren"), threw them away. (Id. ¶ 10.) Warren also did not allow DiPaulo to be paid for pre-approved training, causing her to use a vacation day to attend training while allowing a co-worker in a similar position to be paid for the same training. (Id. ¶ 11.) In addition, DiPaulo's supervisors added mailboxes to her delivery route and failed to properly credit her for the additional workload, resulting in a reduction of her wages. (Id. ¶¶ 12-13.) The alleged failure to properly adjust her route occurred on August 31, 2004. (Id., Ex. A.)

DiPaulo alleges that these actions were performed "for discriminatory reasons based on her medical impairments and disability related conditions, and had the purpose and effect of creating a hostile and abusive work environment that forced [her] to leave her job due to the intolerable working

2

conditions." (Id. ¶ 24.) She contends that "based exclusively or in large measure upon Warren's actions of harassment . . . [she] was medically diagnosed with work[]-related stress to include panic attacks, and show[ed] symptoms of severe anxiety, hair loss and heart arrhythmias, later medically diagnosed as severe anxiety and severe clinical depression." (Id. ¶ 14.) DiPaulo claims that her supervisors and managers knew or had reason to know of her mental impairments yet failed or refused to reasonably accommodate her with respect to her job duties and responsibilities. (Id. ¶ 20.) DiPaulo resigned on September 15, 2004. (Id., Ex. A.)

DiPaulo subsequently applied for disability retirement, which was approved retroactive to September 15, 2004. (Id., Ex. A.) On October 21, 2004, she contacted the Equal Employment Opportunity ("EEO") Office of USPS, alleging she had been discriminated against on August 31, 2004, based on her sex and mental disabilities. (Id., Ex. A at 1.)[1] She filed a formal complaint of discrimination on January 24, 2005.[2] (Id. Ex. A at 1.) USPS issued a Notice of Final Agency Decision (Corrected) on July 22, 2009, dismissing DiPaulo's claims on the procedural

---

[1] Plaintiff states that she "made contact with the EEO office on or around October 20, 2004." (Doc. 10 at 4.) October 20, 2004, is the date her father allegedly learned of the EEO requirements. This date is past the 45-day period.

[2] DiPaulo's claim was previously dismissed without prejudice by this court on different grounds. See DiPaulo v. Potter, 570 F. Supp. 2d 802 (M.D.N.C. 2008).

3

ground that she failed to contact an EEO counselor within 45 days of the last act of alleged discrimination and on the merits. (Id., Ex. A at 2, 13.)

DiPaulo filed this lawsuit on August 5, 2009. (Id.) She alleges three claims under the Rehabilitation Act and the ADA: first, that USPS violated her rights by discriminating against her because of her disability; second, that USPS constructively discharged her due to her medical impairments and conditions; and third, that USPS discriminated against her by failing or refusing to reasonably accommodate her medical conditions and impairments. (Id. ¶¶ 27-29.) USPS moves to dismiss the action for failure to state a claim or, in the alternative, for summary judgment. (Doc. 4.) USPS argues that DiPaulo failed to timely exhaust her administrative remedies by failing to initiate contact with an EEO counselor within 45 days of the date on which she knew or should have known of the alleged discrimination, in accordance with 29 C.F.R. § 1614.105(a)(1). DiPaulo contends that she timely contacted an EEO counselor and, even if she did not, her case should be equitably tolled based on USPS's conduct and her alleged mental and psychological impairments. (Doc. 10.) Additional facts specific to the analysis are set forth in more detail below.

## II. ANALYSIS

### A. Motion to Strike

USPS moves to strike DiPaulo's surreply brief. (Doc. 13.) The Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina only allow for the filing of a motion, a response to a motion, and a reply. See Local Rules 7.3 & 56.1. Parties do not have the right to file a surreply. See Johnson v. Rinaldi, No. 1:99CV170, 2001 WL 293654, at *7 (M.D.N.C. Feb. 16, 2001) (noting that the "[c]ourt knows of no authority establishing a right to file a surreply"). Generally, courts allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply. See United States v. Falice, No. 1:04CV878, 2006 WL 2488391 (M.D.N.C. Aug. 25, 2006); Khoury v. Meserve, 268 F. Supp. 2d 600, 605-06 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004).

Here, USPS raised no new arguments in its reply memorandum in support of its motion for summary judgment. (Doc. 11.) Rather, USPS's reply simply responded to DiPaulo's contention and supporting declaration that she believed Mr. Tom Monroe ("Monroe"), whom she and her father contacted at USPS "[i]n and around early September 2004," was an EEO counselor. Because Federal Rule of Civil Procedure 12(f) applies to pleadings,

5

however, the court will not strike the surreply (Doc. 12) but will simply not consider it and its attachments.[3]

**B.   Motion for Summary Judgment**

**1.   Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those identified by controlling law as essential elements of the claims asserted by the parties. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine as to such facts if the evidence is sufficient for a reasonable trier of fact to find for the nonmoving party. Id. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When ruling on a motion for summary judgment, a court "is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[3] Even if the court were to consider the materials in DiPaulo's surreply and attached declarations, however, it would not change the outcome. Those materials do not create a genuine issue of material fact whether USPS knew, or should have known, it misled DiPaulo into believing that she had timely contacted an EEO counselor or could delay in doing so.

6

The moving party bears the burden of initially "demonstrat[ing] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once the moving party has carried its burden, the nonmoving party must present specific facts which show more than some "metaphysical doubt" that a genuine issue of material fact requires trial. Matsushita, 475 U.S. at 586. The "mere existence of a scintilla of evidence" is insufficient to defeat summary judgment. Anderson, 477 U.S. at 252. Even where intent and motive are crucial to determining the outcome of the cause of action, unsubstantiated speculation and bald assertions will not withstand summary judgment. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat. Bank of Ariz. v. Cities Service, Co., 391 U.S. 253, 289 (1968)). Trial is unnecessary if either "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).

### 2. Failure to Timely Exhaust Administrative Remedies

USPS argues that it is entitled to judgment because DiPaulo failed to timely exhaust her administrative remedies. Specifically, USPS contends that DiPaulo failed to timely

initiate contact with an EEO counselor within 45 days of when she knew or should have known of her alleged discrimination in violation of 29 C.F.R. § 1614.105(a)(1). DiPaulo counters that she initiated contact within 45 days of when she spoke with Monroe at USPS, who she claims appeared to be an EEO counselor and, alternatively, that the 45-day time period should be equitably tolled.

### a. Timely Initiating Contact with an EEO Counselor

A federal employee is required to exhaust her administrative remedies prior to bringing a claim for discrimination in district court. See 42 U.S.C. § 2000e-16; 29 U.S.C. § 794a; 42 U.S.C. § 12111(5)(B)(i) & 12133; Wilkinson v. Rumsfeld, 100 F. App'x 155, 157 (4th Cir. 2004) (unpublished) (Rehabilitation Act claims against federal government must comply with same administrative procedures that govern federal employee Title VII claims) (citing 45-day period in 29 C.F.R. § 1614.105); cf. Long v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc., 9 F.3d 340, 343 (4th Cir. 1993) (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976)). As part of the exhaustion requirement, the employee must initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action. 29 C.F.R. § 1614.105(a)(1). Failure to timely initiate contact

with an EEO counselor is grounds for dismissal. Zografov v. V.A. Med. Ctr., 779 F.2d 967, 969-70 (4th Cir. 1985) (holding in Title VII claim that a federal employee who failed to timely initiate contact with an EEO counselor was barred from bringing suit for his "failure to exhaust administrative remedies," absent estoppel).

The Equal Employment Opportunity Commission ("EEOC") has held that in order to "initiate contact" with an EEO counselor, an employee must: (1) contact an agency official logically connected with the EEO process, even if that official is not an EEO counselor; (2) exhibit an intent to begin the EEO process; and (3) allege that an incident in question is based on discrimination. Pueschel v. Veneman, 185 F. Supp. 2d 566, 569-70 (D. Md. 2002); see Johnson v. Cohen, 6 F. App'x 308, 311 (6th Cir. 2001) (unpublished) (noting and applying EEOC interpretation as not plainly erroneous or inconsistent with 20 C.F.R. § 1614.105).

DiPaulo alleges that she was last discriminated against on August 31, 2004. (E.g., Doc. 5, Ex. A-1 (Information of Pre-Complaint Counseling signed by DiPaulo).) She first initiated contact with an EEO counselor on October 21, 2004, 51 days after the alleged discriminatory incident. (Doc. 5, Ex. A-1.)[4] It is

---

[4] The EEO Dispute Resolution Specialist's Inquiry Report, contained in Exhibit A-1, mistakenly states the date of initial contact as October 21, 2005 rather than October 21, 2004. (Doc. 5, Ex. A ¶ 3.)

9

undisputed, as DiPaulo claims, that she contacted Monroe. However, Monroe was not an EEO counselor, nor has he ever worked in USPS's EEO office. (Doc. 11, Ex. C.) Rather, he was a Workplace Environment Analyst for the Greensboro District of the USPS. (Id.) Because Monroe is not "an agency official logically connected with the EEO process," the court finds that DiPaulo failed to make a timely contact.

DiPaulo contends that the EEOC has held that an aggrieved party fulfills her responsibilities under the regulations when contact is made with an EEO office, citing Stauffer v. Chertoff, EEOC App. No. 01200637511 (E.E.O.C. August 2, 2007) (Doc. 10, Ex. B), which is also found at 2007 WL 2295683. However, in Stauffer, the agency found that the plaintiff had timely contacted an EEO office, which was documented by the EEO office on its phone log. Unlike in Stauffer, there is no evidence that DiPaulo contacted an EEO office until October 21, 2004. Stauffer is therefore inapplicable to the present case.

    **b.    Equitable Relief**

DiPaulo asserts that the 45-day time limit should be equitably tolled. Her argument appears to rest on two separate bases. First, she argues that the time limit should be tolled because Monroe led her to believe he was an EEO counselor and that it appeared to her that talking with him sufficed. Second,

she contends that her mental disabilities were such that the court should waive strict adherence to the 45-day time limit.

The regulations governing federal employee discrimination claims provide that the time limits "are subject to waiver, estoppel and equitable tolling." 29 C.F.R. § 1614.604(c). And the Fourth Circuit has ruled that the deadline acts as a statute of limitations that can be subject to equitable tolling. Zografov, 779 F.2d at 970. However, the Fourth Circuit applies equitable exceptions sparingly. Olson v. Mobil Oil Corp., 904 F.2d 198, 201 (4th Cir. 1990) (narrow exception); cf. Weick v. O'Keefe, 26 F.3d 467 (4th Cir. 1994) (recognizing equitable tolling where U.S. Navy EEO counselor deliberately lied to plaintiff in order to lull her into inaction).

There is no evidence of waiver. Equitable tolling applies where a defendant has wrongfully deceived or misled a plaintiff in order to conceal the existence of a cause of action. Lawson v. Burlington Indus., Inc., 683 F.2d 862, 864 (4th Cir. 1982). To be entitled to equitable tolling, an otherwise time-barred plaintiff must present "(1) extraordinary circumstances, (2) beyond [her] control or external to [her] own conduct, (3) that prevented [her] from filing on time." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (citation omitted). On the other hand, equitable estoppel applies where "the employee's failure to file in timely fashion is the consequence either of a

11

deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." Price v. Litton Bus. Sys., 694 F.2d 963, 965 (4th Cir. 1982); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128-29 (4th Cir. 1987); Zografov, 779 F.2d at 970. Section 1614.105 specifies four instances in which a plaintiff is entitled to equitable tolling of the 45-day time limit: (1) the claimant was not notified or aware of the time limit; (2) the claimant did not know and reasonably should not have known of the discriminatory conduct; (3) despite due diligence, the claimant was prevented from contacting the counselor by circumstances beyond his or her control; and (4) any reason considered sufficient by the agency or Commission. 29 C.F.R. § 1614.105(a)(2). The burden of showing facts to justify tolling rests with DiPaulo. McClamb v. Rubin, 932 F. Supp. 706, 713 (M.D.N.C. 1996).

DiPaulo contends her conversation with Monroe is evidence that she was misled into believing she properly initiated an EEO contact. She argues that he misled her into thinking that he was an EEO counselor and that her doctor's clearance was needed in order to go forward with her case. Consequently, she contends, USPS affirmatively prevented her from timely contacting another EEO counselor and should be estopped from asserting the deadline.

The court finds that no genuine issue of material fact exists. A careful reading of DiPaulo's affidavit makes clear that there is no evidence that Monroe portrayed himself to be an EEO counselor or misled DiPaulo. On the contrary, there is ample evidence that DiPaulo understood that her October 21, 2004, contact was the first formal or informal contact she had with an EEO office.

In her declaration, DiPaulo states as follows:

> In and around early September 2004, I, along with my father, Robert Taylor, attempted to contact the equal employment opportunity (EEO) office of the U.S. Postal Service, to seek some relief from the unfair employment practices under which I was working. My mental state was such that I was not thinking clearly . . . . As such, my father, Robert Taylor, contacted the Human Resources (HR) office in Greensboro to find out who I needed to speak to. At HR's direction, my father, with me present, contacted Tom Monroe. In speaking with Mr. Monroe about my claims and issues he learned that I was out of work on stress leave and that I was seeing a psychiatrist due to my claim of work related stress. The indications I received from Mr. Monroe was [sic] that he worked at the U.S. Postal Service's EEO office. Tom Monroe told me that he could not or would not speak with me about my EEO issues until I got clearance or permission from my psychiatrists to speak with him. . . .
>
> Mr. Monroe never indicated to me that I must get this clearance from my physician with in [sic] a forty-five day time limit if I were to speak with him about the EEO matters that caused me to call his office in the first place. It appeared to me from my conversation with Mr. Monroe that by contacting Mr. Monroe and letting him know the reasons for my contact was [sic] all I needed to do at that time, and that once I got permission or clearance from my physician I could pick back up with my discussions with Mr. Monroe and everything would be fine. From what I was

13

>    understanding from Mr. Monroe, any requirements I had
>    to meet would take place from the point of me getting
>    permission from my physician to speak with him.

(Doc. 9 at 2-3 ¶¶ 9, 10.)

Nowhere is there any indication that Monroe or anyone on behalf of USPS deliberately misled DiPaulo into thinking that contacting Monroe was sufficient to satisfy the 45-day requirement. Nor is there any conduct which USPS should unmistakably have understood would cause DiPaulo to delay filing her charge. DiPaulo's declaration contains vague statements such as "indications" she received, how it "appeared to [her]," and "[f]rom what [she] was understanding." None of these reflects any conduct or statement that USPS should have realized would have led a reasonable person to either believe she had fulfilled her 45-day notice requirement or could delay in doing so. Nor does DiPaulo present any alleged statement of USPS upon which DiPaulo reasonably could have relied in believing she satisfied her 45-day requirement. <u>Lawson</u>, 683 F.2d at 864.

This conclusion is wholly consistent with DiPaulo's Information for Pre-Complaint Counseling form, which she signed November 2, 2004, wherein she acknowledged that she had conducted "no EEO activity until now." (Doc. 5, Ex. A-1 at 13.) She also claimed in a letter to the EEOC on November 28, 2004, that she did not become aware of the option of filing with the EEOC until October 20, 2004, and requested that her 45-day time

limit not start until October 20, 2004.[5]  (Doc. 5, Ex. A-2.)  Her psychiatrist's statement reflects as well that DiPaulo did not learn of the 45-day limit to contact an EEO counselor until October 2004.  (Doc. 9, Ex. C.)  If DiPaulo believed that Monroe had held himself out as an EEO counselor, DiPaulo would not have immediately initiated contact with an EEO counselor when she learned of the 45-day time limit because she would have believed she had already fulfilled that requirement.  See Doc. 5, Ex. A-2 (stating in DiPaulo's letter to the manager of EEOC Dispute Resolution "[i]t was on 10-20-04 when my Dad informed me that we should file an EEOC claim.  That was the first knowledge I had that I had this option with EEOC.")  Further, Monroe has declared that he has never held himself out as working for the EEO office and never told DiPaulo he could not speak with her without permission from her doctor (but rather that he could not speak to her doctor without her written consent).  (Doc. 11, Ex. C.)

---

[5] Even if DiPaulo were not aware of the time limit, she was nevertheless on constructive notice of it.  Revised Poster 72, which details the requirements of the 45-day time period and how to properly file an EEO complaint, was posted at the Hillsborough Post Office since September 2001.  (Doc. 5, Ex. B.)  Because notice of the filing requirement was properly posted, DiPaulo is not able to claim equitable tolling on account of her being unaware of the 45-day time limit.  See English v. Pabst Brewing Co., 828 F.2d 1047, 1050 (4th Cir. 1987) (citing & quoting McClinton v. Alabama By-Products Corp., 743 F.2d 1483, 1486 (11th Cir. 1984) ("If notice is properly posted and the employee does not see it or sees it but is still not aware of his rights, there will normally be no tolling of the filing period.")).

Therefore, DiPaulo has failed to convince the court that the record, taken as a whole, raises a genuine issue of material fact that USPS misled her into believing that Monroe was an EEO counselor or that she could delay in pursuing her claim. See Matsushita, 475 U.S. at 587.

DiPaulo also argues that the 45-day time limit should be waived or equitably tolled due to her mental impairments. Generally, federal courts will apply equitable tolling due to a petitioner's mental condition only in cases of profound mental incapacity. Sosa, 364 F.3d at 513 (citing Grant v. McDonnell Douglas Corp., 163 F.3d 1136, 1138 (9th Cir. 1998) (finding equitable tolling based on mental condition to be appropriate "only in exceptional circumstances, such as institutionalization or adjudicated mental incompetence")).[6] A plaintiff carries a heavy burden and must demonstrate that her mental condition prevented her from filing her claim because of a condition that existed during the majority of the relevant period. Steele v. Brown, 993 F. Supp. 918, 921-22 (M.D.N.C. 1998) (Title VII)

---

[6] The Fourth Circuit has been particularly parsimonious in finding profound mental incapacity. Albeit an unpublished opinion, Farabee v. Johnson, 129 F. App'x 799 (4th Cir. 2005), is instructive for its reasoning. There, the Fourth Circuit held that a plaintiff who suffered from severe mental illness, including attempts to commit suicide by setting fire to his bed sheets, lacerating his arms, and eating glass and batteries, and who was institutionalized for part of the relevant time period, did not show cause to excuse a procedural default. Id. at 802-03. The court found that he was still sane during part of the time period and was thus able to timely file his petition. Id. at 803.

(citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (heavy burden) & Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451, 453 (7th Cir. 1990) (required demonstration)), aff'd, 155 F.3d 561 (4th Cir. 1998) (per curiam). A mental illness ordinarily prevents a limitations bar "only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." Miller v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996) (emphasis in original).

DiPaulo claims that during the 45-day time limit she was suffering from "severe, clinical depression, PTSD, [and] debilitating anxiety" and thus lacked the concentration and focus needed to initiate contact with an EEO counselor. (Doc. 10 at 8.) Her treating psychiatrist, Dr. Walter Afield, stated that "during the August 2004 and September, 2004 time period . . . Cathy Di[P]aulo - because of the mental illnesses specified above - was not able to engage in rationale [sic] thought and deliberative decision making and could not reliably handle her legal affairs and fully and knowingly understand and rationally act upon her legal rights." (Doc. 10, Ex. A.)

While DiPaulo may have been suffering from mental and physical ailments during the 45-day time limit, her condition did not rise to the level necessary to constitute "profound mental incapacity." Sosa, 364 F.3d at 512. On the contrary,

17

during the 45-day time period she wrote multiple letters to pursue and protect her interests, including the following: on September 3, 2004, DiPaulo wrote a letter to Majed Aziz with a 33-page package of materials addressing her medical condition (Doc. 11, Ex. D); on September 5, 2004, she wrote a letter to her supervisor, Tammy Baldwin ("Baldwin"), discussing her medical condition (id.), a letter to Baldwin and Lori Warren ("Warren") inquiring about the type of leave she should take for the time she would be out of work and her expectation to be paid (id.), and a letter to Baldwin and Warren stating that her father will communicate with USPS on her behalf because "I am in a very stressed and depressed [sic] at this time and for a while I had rather not have to deal with the Post Office unless it is something he cannot handle" (id.). In addition, on October 5, 2004, DiPaulo wrote a detailed letter to her union representative, Frank Suttles, concerning her claim. (Id.)

DiPaulo's ability to craft and send these multiple letters during the 45-day time period refutes her claim of incapacity during that time. See, e.g., Robison v. Hinkle, 610 F. Supp. 2d 533, 540 & nn.12-16 (E.D. Va. 2009) (noting need for allegedly infirm party to demonstrate causal nexus between extraordinary circumstances and lateness of filing, and listing cases finding unwillingness to recognize equitable tolling where a party files pleadings during period of alleged incompetence), appeal

dismissed, 357 F. App'x 517 (4th Cir. 2009), cert. denied, 130 S. Ct. 2069 (2010); Walker v. Schriro, 141 F. App'x 528, 530-31 (9th Cir. 2005) (unpublished) (finding district court reasonably concluded that petitioner could have filed federal habeas action on time because petitioner's state court filings were made close to the habeas deadline); Price v. Lewis, 119 F. App'x 725, 726-27 (6th Cir. 2005) (unpublished) (holding that petitioner who was able to file legal papers during the period of his alleged incapacity was not entitled to equitable tolling).

In summary, DiPaulo has failed to demonstrate a genuine issue of material fact as to whether she complied with the requisite 45-day time limit or, if not, she should be excused from the requirement.

### III. CONCLUSION

For the reasons stated herein,

IT IS THEREFORE ORDERED that Defendant's Motion to Strike (Doc. 13) is DENIED and Defendant's Motion for Summary Judgment (Doc. 4) is GRANTED as to all claims. A separate Judgment will be entered.

/s/   Thomas D. Schroeder
United States District Judge

August 23, 2010